## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RJL Industries Inc.<br><br>                    Plaintiff,<br><br>    v.<br><br>Kapsch TrafficCom USA, Inc, Neology, Inc.,<br>TransCore, LP, Conduent Incorporated.<br><br>                    Defendants, | **Case No.:  7:25-cv-9277**<br><br>**CLASS ACTION COMPLAINT**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff RJL Industries Inc. ("Plaintiff") on behalf of itself and all others similarly situated, by and through their undersigned counsel, respectfully submits this Complaint against Defendants Kapsch TrafficCom USA, Inc. ("Kapsch"), Neology, Inc. ("Neology"), Transcore, LP ("Transcore"), and Conduent Incorporated ("Conduent") (collectively, "Defendants"). Plaintiff alleges the following based on personal knowledge as to Plaintiff and Plaintiff's own acts, and on information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's counsel, including a review of E-ZPass and Tolls-By-Mail billing statements, correspondence, news releases and articles, public statements, and public complaints concerning the facts alleged.

### INTRODUCTION

1.      Plaintiff brings this action on behalf of itself and a Class of all similarly situated individuals and entities who have paid tolls in excess of what was due as a result of using New York's cashless toll systems (called "E-ZPass" and "Tolls-By-Mail") for bridges, tunnels, and roads within the authority of the New York Thruway Authority (NYSTA), New York State Bridge

Authority (NYSBA) or Metropolitan Transportation Authority (MTA) (collectively, "NY Agencies") and serviced by Defendants by providing their technology, equipment and invoicing services to the NY Agencies.

2. Defendants, who equip, operate, maintain and otherwise service the E-ZPass cashless tolling systems, have improperly charged Plaintiff and hundreds and thousands of other drivers, inflated and arbitrary toll amounts, including excessive amounts without notice and their knowledge and without providing any meaningful process to dispute or appeal such charges. Defendants have used the E-ZPass cashless tolling system as a means to fill their own coffers at the expense of Plaintiff and millions of other drivers who use the E-ZPass equipped roads, bridges and tunnels in the State of New York. Defendants' scheme has resulted in tens of millions of dollars in overcharges on motorists. Defendants engaged in this conduct in bad faith, knowing that their actions were contrary to law, in order to unjustly enrich themselves at the expense of Plaintiff and other Class Members.

3. Plaintiff was assessed thousands of dollars in overcharges—an amount that is arbitrary, excessive, and completely untethered from the value of the underlying toll. For example, Plaintiff owns 13 vehicles that routinely drive on the Governor Mario M. Cuomo Bridge ("MC Bridge") (formerly known as the Tappan Zee Bridge). Defendants have overcharged Plaintiff by more than $98,000 at the MC Bridge alone from January 1, 2024 to December 31, 2024. This is despite that Plaintiff had a functional and correctly mounted E-ZPass transponder that was properly registered to Plaintiff's vehicles and connected to an adequately funded E-ZPass account. When Plaintiff discovered some of these overcharges and disputed them, Defendants not only failed to initially provide a reason for the charges, but also did not return the money to Plaintiff's E-ZPass account, and the Plaintiff lost additional money on which it should have earned interest.

4.    Plaintiff brings this action for unjust enrichment, New York General Business Laws §§ 349 and 350, conversion, negligence (negligent misrepresentation and negligence *per se*), breach of fiduciary duties, and Relief under Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*., to stop Defendants from continuing their unlawful course of conduct and to recover for ascertainable monetary losses Defendants have caused to Plaintiff and Class Members.

## JURISDICTION AND VENUE

5.    This Court has subject matter jurisdiction over this case under the Class Action Fairness Act, 28 U.S.C. § 1332(d). There is minimal diversity between Defendants and putative Class Members and the aggregate claims of the putative Class Members exceed $5 million, exclusive of interest and costs.

6.    This Court has personal jurisdiction over each Defendant because each Defendant is either a corporation that conducts business in and maintains operations in the State of New York so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.    Venue is proper in this District since a substantial part of the events or omissions giving rise to Plaintiff's claims, including the transactions complained of herein (that is, the promotion and distribution of the E-ZPass transponders and the assessment of tolls withdrawn from Plaintiff's account), occurred in this District and/or had substantial effect in this District.

## PARTIES

### A.    Plaintiff

8.    Plaintiff RJL Industries Inc., headquartered in Blauvelt, NY, provides professional transportation and freight services. Plaintiff's fleet of vehicles comprise 13 commercial trucks that deliver shipping solutions for various cargo types across North America. Plaintiff is registered with the U.S. Department of Transportation as a commercial establishment operating commercial

motor vehicles in interstate commerce. All 13 of its trucks regularly pass through the MC Bridge toll lanes multiple times per day, seven days a week, as part of their regular business routine. Plaintiff has all of its vehicles equipped with an E-ZPass transponder.

### B. Defendants

9.      Defendant Kapsch TrafficCom USA, Inc., is a foreign corporation organized and existing under the laws of the State of Delaware, with principal place of business at 2855 Premiere Parkway, Duluth, Georgia. Kapsch is the manufacturer, and the main supplier of equipment used for E-ZPass, including the physical E-ZPass transponders distributed by the NY Agencies to the drivers. Kapsch served as the sole vendor for NY Agencies under multiple contracts between 1995-2022.

10.     Defendant Conduent is a New York corporation with principal executive offices located at 100 Campus Drive, Suite 200, Florham Park, New Jersey. Conduent provides modernized transaction processing, account management and financial management systems, as well as integrated invoice mailing, payment processing, and license plate identification solutions and services for E-ZPass customers. Defendant Conduent has provided tolling services to New York authorities for almost 30 years. Since at least 2007, Conduent has provided all operations of the customer service centers in New York and tag distribution services for all partner agencies. Conduent is responsible for providing E-ZPass® account management systems, as well as license plate identification solutions for the state's Tolls by Mail program.

11.     Defendant Neology is a corporation duly organized under the laws of the State of Delaware, with its principal place of business at 1917 Palomar Oaks Way, Carlsbad, California. Neology designs, manufactures, supplies, offers for sale, exports, and sells radio frequency identification (RFID) products compatible with the E-ZPass tolling system. Among other things,

Neology supplies the RFID transponders, RFID readers, automatic license plate recognition technology and cloud-based software suite for managing toll system transactions.

12.     Defendant Transcore is a Delaware limited corporation with its principal office at 150 4th Avenue North, Nashville, Tennessee. Transcore's duties include obtaining transaction data from the electronic tolling systems; obtaining images of vehicle tags; obtaining violation images, video, and data; processing electronic toll collection transactions with data from both transponder based and license plate based video tolling; operating the E-ZPass online account system that host account holders personal and financial information; billing account holders' financial institutions to replenish their E-ZPass accounts; assessing tolls and withdrawing funds from E-ZPass accounts to satisfy assessed tolls; acting as custodian of the funds belonging to E-ZPass account holders; and providing the functionality to inventory, program, test, issue, recall, and track transponders.

## FACTUAL ALLEGATIONS

### A.     E-ZPass Electronic Tolling System

13.     The E-ZPass is the name for an all-electronic tolling system used on highways, bridges, and tunnels in New York and elsewhere. E-ZPass eliminates the need for physical manual toll collection by allowing electronic sensors to automatically read signals emitted by transponders located in passing vehicles. The tolling system relies on several key components: E-Z Pass transponders, which are small electronic devices placed inside the vehicle's windshield and contain the user's unique account information. Antennas placed above each E-ZPass lane at the toll plaza emit a radio frequency signal that interacts with the transponder. The detection of that electronic transmission results in the debiting of a prepaid account maintained by the driver/owner of transponder for the payment of the appropriate toll. Users can sign up for an E-ZPass account, which replenishes automatically via credit card or bank account when the balance gets low.

14.     E-ZPass is used in 19 states primarily along the eastern seaboard. Several state agencies in New York, New Jersey, and Pennsylvania represent approximately 40 percent of all U.S. toll transactions and nearly 70 percent of all US toll revenue. These agencies formed an alliance known as the E-ZPass Interagency Group ("E-ZPass Group"), the goal of which was to implement a regionally interoperable toll collection program that would satisfy the divergent toll collection and traffic management needs of the agencies and provide regional mobility and convenience to its customers. The State of New York has three main agencies that handle tolls, each having responsibility over different transportation channels: New York Thruway Authority (NYSTA), New York State Bridge Authority (NYSBA) and Metropolitan Transportation Authority (MTA).

15.     The NYSTA operates a 570-mile highway system across the state, which includes the MC Bridge that carries state highway I-84 across the Hudson River. Each month, the MC Bridge generates on average $23 million in revenue and records about 140,000-160,000 vehicles passing over it. The MC Bridge handles more than 50 million vehicles each year.

**B.    Defendants Overcharged Plaintiff and Class Members**

16.     Tolls on the New York State thruways roads, tunnels and bridges are calculated according to the height of the vehicle, total number of axles of a vehicle, and distance traveled. The E-ZPass tolling programs include various plans from which a commuter can choose based on the frequency or routes travelled. The rate schedules are posted for each of the NY Agency operated channels and are periodically updated. Defendants are bound to invoice motorists in conformance with the published rate, including any applicable discounts.

17.     The State of New York offers resident discount plans for frequent travelers on certain roads, bridges and tunnels. One such plan is the "Special Commuter Plan" which offers discounts intended for frequent users of certain roads, tolls and bridges. To avail oneself of the

discount, a vehicle needs to make a minimum of 20 trips per month. If fewer than 20 trips are taken per month, then commuters are charged $4.05 for each trip not taken. The Special Commuter plan applies to the MC Bridge.

18.     Plaintiff was enrolled in the Special Commuter plan. As such, Plaintiff was entitled to receive a $7.76 discount per trip ($4.05 versus $11.81 Tolls by Mail rate) on MC Bridge. Despite being eligible and enrolled in the MC Bridge Commuter Plan and entitled to the discount, Plaintiff's vehicles were charged rates significantly higher than the published rates. Beginning in or about October 2022, Plaintiff started receiving E-ZPass invoices that were in excess of the published rate. Plaintiff's E-ZPass account was deducted by Defendants in excess of the tolls owed. For example, one of Plaintiff's vehicle, which is a 6-axel commercial truck incurred charges at the MC Bridge in the month of January 2024 that exceeded the published rate by more than 30%.  This conduct continues to this day. Plaintiff calculated her E-ZPass overcharges for MC Bridge, which alone resulted in $98,000 in overcharges between January 1, 2024 and December 31, 2024. Plaintiff suspects that there are at least tens of thousands more in overcharges as a result of Defendants' misconduct.

19.     On several occasions, Plaintiff contacted E-ZPass to dispute the overcharges, but did not receive adequate assistance. That is despite that Defendants' customer representatives conceded that Plaintiff's vehicles were improperly charged excess tolls. Defendants continued to overcharge Plaintiff and deduct amounts from her E-ZPass account in excess of the published rate. Plaintiff's E-ZPass account is replenished with Plaintiff's own funds from her credit card and/or bank account. Such withdrawals were in excess of what Plaintiff owed to the NY Agencies for driving on the MC Bridge and other roads, tunnels and bridges in New York and were not

authorized by the Plaintiff. This is true for thousands and millions of other NY drivers who regularly drive on the E-ZPass equipped roads, tunnels and bridges in the State of New York.

20.    Defendants' actions, which caused Plaintiff's E-ZPass account to be overcharged resulted in the E-ZPass account getting depleted unexpectedly and much sooner. As a result, when Plaintiff vehicles drove in the State of New Jersey, Plaintiff's E-ZPass account was not adequately funded and resulted in violations. The State of New Jersey sent Plaintiff in collections to collect more than $10,000 in fees, which Plaintiff otherwise would not owe, had Defendants correctly charged the Plaintiff.

### C.    Defendants Are Well Aware of the Repeated Incorrect Charges

21.    Defendants are well aware that their electronic toll-collection equipment regularly fails to register valid and correctly mounted transponders, fails to apply the applicable discount or incorrectly recognizes drivers' license plate as out of state, causing thousands of travelers to overpay for tolls. Indeed, various internet channels are rife with grievances from E-ZPass users complaining about overcharges experienced at Defendants' serviced E-ZPass toll lanes. Countless number of users complain that despite having a fully functional E-ZPass transponder, Defendants charged the higher Tolls-By-Mail rate. Others have reported receiving bills without having used the E-ZPass toll lane on the particular day and time. This is seemingly so because Defendants incorrectly tag the license plates of a vehicle to wrong users, resulting in significant monetary liability, fines, and hours of users' time dedicated to efforts to resolve the issues.

22.    Defendant Kapsch has also been sued in the past for levying hefty fines for missed tag readings, despite that motorists' transponders were active and properly funded. The lawsuits alleged that Defendants failed to timely notify users of pending charges yet issued violation notices to users in an attempt to collect fines worth of hundreds of dollars. The allegations also included

wrong license plate being captured and being billed for Tolls-By-Mail rate rather than the discounted E-ZPass rates.

23.     Making matters worse, Plaintiff's own experience and experience of many other drivers note that there is no redressal for Plaintiff and the Class Members' questions or need for assistance relating to these overcharges. Various public forums note that complaints include "unresponsive authorities… having a hard time finding information… and tolls are not posted online in a timely fashion."[1] Users frequently note that there is no good method to file a dispute online or a complaint and the customer service lines come with long holds and inadequate assistance.

24.     The complaints against E-ZPass (hence the Defendants) reached so high that New York legislature has attempted to pass the Toll Payer Protection Act (TPPA). The proposed legislation's main goal is to ensure fairness, transparency and accountability in the tolling processes and address issues pertaining to timely and clear communication about charges and potential penalties. The legislation is a result of unfair fines with no redressal services available. The legislation aims to improve the notification system for incurred fines but at the same time also ensuring that the fines are fair and would create awareness about the various helplines offered to motorists to obtain information regarding their fines.

25.     Despite these efforts, Defendants fail to implement a system to timely notify customers when such overcharges happen or establish processes intended to effectively remedy incorrect toll charges. Instead, Defendants turned the E-ZPass and Tolls-by-Mail systems into a

---

[1]     https://www.lohud.com/story/news/local/tappan-zee-bridge/2018/01/11/cashless-tolling-amnesty-program-frequently-asked-questions-and-some-answers/1020219001/

profit-making endeavor that imposes unfair and improper toll rates, much in excess of the published toll rates.

26.    Each of the Defendants benefitted from its misconduct because it caused Plaintiff and Class Members to be overcharged for tolls that were serviced by the Defendants and thereafter, held monies in their own accounts in excess of what was due. As a result, Plaintiff and Class Members were deprived of millions of dollars and any accrued interest while Defendants enjoyed the benefit of that monies.

## CLASS ACTION ALLEGATIONS

27.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23, on behalf of herself and the following Class and Subclass:

**New York Class:** All individuals and entities to whom Defendants assessed tolls in excess of the published rate on E-ZPass equipped roads, tunnels and bridges in the State of New York from 2016 to Present that were serviced by the Defendants, individually or collectively.

**MC Bridge Class:** All individuals and entities to whom Defendants assessed tolls in excess of the published rate on MC Bridge from 2016 to Present that were serviced by the Defendants, individually or collectively.

28.    Excluded from each Class and Subclass are: (1) any Judge or Magistrate presiding over this action and any Members of their families; (2) Defendants, subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest and their current or former employees, officers, and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

29.     Subject to additional information obtained through further investigation and discovery, the foregoing Class may be expanded or narrowed by amendment or amended complaint. Specifically, excluded from the Class is any entity in which any Defendants had or has controlling interest or which has a controlling interest in any Defendants, and any Defendants' legal representative, assigns, and successors.

30.     **Ascertainability:** Membership of Class is defined based on objective criteria, and individual Members will be identifiable from Defendants' records, including records reflecting the tolls levied on Plaintiff and the Class as well as the published rate.

31.     **Numerosity:** Members of the Class are so numerous that joinder is impracticable. While the exact number of Class Members is unknown to Plaintiff, it is believed that the Class is comprised of at least hundreds of thousands of Members. The Class, however, is readily identifiable from information and records in the possession of Defendants.

32.     **Commonality and Predominance**: Common questions of law and fact exist as to all Members of the Class. These questions predominate over questions that may affect only individual Class Members because Defendants have acted on grounds generally applicable to the Class. Such common factual or legal questions include:

    a.   whether Plaintiff and the Class Members have been charged tolls in excess of the published rate resulting in overcharges;

    b.   whether Plaintiff and Class Members have sustained monetary loss and the proper measure of that loss;

    c.   whether Defendants collected, took, or received monies in Defendants' possession and belonging to Plaintiff and Class Members and wrongfully converted such monies to its own use and benefit;

    d.   Whether the overcharge amounts to unjust enrichment of Defendants;

    e.   Whether Plaintiff and Class Members were damaged as a proximate cause or result of Defendants' conduct;

    f.   Whether Plaintiff and Class Members are entitled to rescission, restitution, or other relief;

    g.   whether Plaintiff and Class Members are entitled to other appropriate remedies, including injunctive relief.

33.    **Typicality**: Plaintiff's claims are typical of the Members of the Class, as all Members of the Class were unfairly and unjustly charged tolls in excess of published rate, resulting in overcharges and injury to the Plaintiff and the Class.

34.    **Adequacy:** Plaintiff will fairly and adequately protect the interests of Class Members because Plaintiff has no interests antagonistic to, or in conflict with, Classes that it seeks to represent. Furthermore, Plaintiff has retained counsel experienced and competent in prosecution of complex class action litigation. Plaintiff and its counsel are committed to vigorously prosecuting this action on behalf of the Members of the Class, and they have the resources to do so. Neither Plaintiff nor its counsel have any interests adverse to those of the other Members of the Class.

35.    **Superiority**: Class action treatment is superior to all other methods for the fair and efficient adjudication of this controversy in that, among other things, such treatment will permit a large number of similarly-situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender. The benefits of the class action mechanism, including providing persons or entities with a method for obtaining redress on claims that might not be practicable to pursue

individually, substantially outweigh any difficulties that may arise in the management of this class action.

## CAUSES OF ACTION

### COUNT I
### Unjust Enrichment

36.    Plaintiff incorporates by reference and realleges each of the foregoing paragraphs as though fully set forth herein.

37.    As a direct and proximate cause of Defendants' misconduct as set forth above, Defendants have been unjustly enriched at the expense of Plaintiff and Class Members.

38.    Defendants have been unjustly enriched by monies as a result of overcharging Plaintiff and the Class in excess of the published rate.

39.    Defendants unjustly enriched themselves with Plaintiff's and Class Members' possession of their monies when they instituted an unauthorized and unlawful overcharge when they drove vehicles on Defendants' equipped E-ZPass toll lanes.

40.    As part of their misconduct, Defendants withdrew funds in excess of what was owed from Plaintiff's and Class Members' E-ZPass accounts without their knowledge and/or authorization. Plaintiff and Class Members had provided Defendants with their bank information as part of their E-ZPass Account as a matter of convenience and part of the E-ZPass operating structure which requires Plaintiff and Class Members to have a fully funded E-ZPass account at all times. This is for Defendants' benefit and allows them to be paid immediately each time Plaintiff or Class member incurs a charge on any of the Defendants' operated E-ZPass toll lane.

41.    Defendants have exceeded their authority by substantially overcharging the Plaintiff and Class Members. Plaintiff and Class Members were not aware and did not authorize or give permission to Defendants to charge their E-ZPass account in the unauthorized amounts that

it did during the Class Period, thereby unjustly enriching themselves at Plaintiff's and Class Members' expense.

42.     A measurable benefit was conferred on Defendants by Plaintiff and Class Members including from the amounts that Defendants overcharged. Plaintiff estimates that the total overcharges are in millions of dollars for the Class.

43.     Under common law principles recognized in claims for unjust enrichment, Defendants should not be permitted to retain the benefits conferred upon them based on the taking of excessive tolls from Plaintiff and Class Members and converting it into revenues and profits without providing compensation therefor.

44.     Under the principles of equity and good conscience, Defendants should not be permitted to retain the benefits they have acquired through the unlawful conduct described above, and as between the two, Plaintiff and Class members have a superior right to some or all of such monies attributable to the monies over Defendants.

45.     Due to the unjust enrichment of Defendants, Plaintiff is entitled to a judgment for damages in an amount equal to the value of the benefit conferred on Defendants, as will be determined at trial.

46.     It would be inequitable for Defendants to retain the profits, obtained by its wrongful conduct, by charging Plaintiff and Class members a higher toll than what was owed.

47.     Plaintiff, on behalf of itself and Class members, seek restitution from Defendants and an order from this Court disgorging all profits and benefits obtained by Defendants from the wrongful conduct set forth above.

## COUNT II
### Violation of the N.Y. GBL § 349

48.    Plaintiff incorporates by reference and realleges each of the foregoing paragraphs as though fully set forth herein.

49.    NY GBL § 349 makes unlawful any deceptive acts and practices in connection with the conduct of any business, trade, or commerce or in the furnishing of any service in the State of New York.

50.    The misconduct alleged herein—namely, Defendants charging of tolls in excess of published rate—are misleading, unfair, deceptive and unlawful, in violation of GBL § 349.

51.    Defendants further made false, misleading and deceptive statements on their websites touting their technology, when in reality, Defendants' technology routinely malfunctions and does not perform as intended, resulting in millions of dollars in overcharges.

52.    The foregoing deceptive acts and practices were directed at the Plaintiff and other Class Members in the State of New York. At all relevant times, Defendants' acts and practices alleged here were in conduct of business, trade or commerce or provision of services within the State.

53.    Defendants knew, or should have known, about the excessive toll charges as alleged above, that drivers were being charged for while using the E-ZPass equipped roads, tunnels and bridges in the State of New York that are serviced by the Defendants.

54.    Plaintiff and Class members have been injured as a direct and proximate result of Defendants' violations described above. Plaintiff and Class Members would not drive through the E-ZPass toll roads and/or would not pay the overcharge had they known that Defendants' technology does not accurately calculate and charge their accounts.

55.    Defendants willfully and knowingly violated § 349 of the New York General Business Law. As a result of Defendants' unlawful action, Plaintiff and Class Members seek to enjoin Defendants' deceptive and unlawful acts and practices described herein to recover actual damages, fifty dollars or both, whichever is greater, as well as treble damages, reasonable attorneys' fees, and all other remedies this Court deems proper.

**COUNT III**
**Violation of the N.Y. GBL § 350**

56.    Plaintiff incorporates by reference and realleges each of the foregoing paragraphs as though fully set forth herein.

57.    NY GBL § 350 provides in relevant part: "False advertising in the conduct of any business, trade or commerce . . . in this state is hereby declared unlawful."

58.    Defendants further made false, misleading and deceptive statements while submitting their bids to NY Agencies procurement contracts as well as their websites touting their technology, when in reality, Defendants' technology routinely malfunctions and does not perform as intended, resulting in millions of dollars in overcharges.

59.    Defendants' actions are untrue and misleading through the deceptive advertisement of their technology, misrepresenting their technology in the NY Agency procurement process and deceiving Plaintiff and Class Members by overcharging tolls in excess of the published rate through their technology.

60.    The foregoing deceptive acts and practices were directed at the Plaintiff and other Class Members in the State of New York. At all relevant times, Defendants' acts and practices alleged here were in conduct of business, trade or commerce or provision of services within the State.

61.     Defendants knew, or should have known, about the excessive toll charges as alleged above that drivers were being charged for while using the E-ZPass equipped roads, tunnels and bridges in the State of New York serviced by Defendants.

62.     Plaintiff and Class Members have been injured as a direct and proximate result of Defendants' violations described above as NY Agencies would not have contracted with Defendants had they known that Defendants' technology does not work as intended.

63.     Plaintiff and all Class Members suffered ascertainable losses that necessarily flowed directly from Defendants' fraud or deceit in its scheme to systematically charge Plaintiff and Class Members more than the published rate.

64.     Defendants willfully and knowingly violated § 350 of the New York General Business Law. As a result of Defendants' unlawful actions, Plaintiff and Class Members seek to enjoin Defendants' deceptive and unlawful acts and practices described herein to recover actual damages, fifty dollars or both, whichever is greater, as well as treble damages, reasonable attorneys' fees, and all other remedies this Court deems proper.

**COUNT IV**
**Conversion**

65.     Plaintiff incorporates by reference and realleges each of the foregoing paragraphs as though fully set forth herein.

66.     Plaintiff and Class Members had a possessory interest in the converted funds. By assessing tolls in excess of the published rate, which resulted in overcharges, Defendants, individually and collectively, have converted and/or misappropriated funds belonging to Plaintiff and individual Class Members.

67.     Defendants intentionally interfered with Plaintiff and Class Members' possession of their monies when they willfully and knowingly instituted an unauthorized and unlawful

overcharge on Plaintiff and Class Members when they used Defendants provided equipment and drove their vehicle's nondefendants equipped E-ZPass toll lanes on various NY roads, tunnels and bridges.

68.     As part of their misconduct, Defendants withdrew funds in excess of what was owed from Plaintiff and Class Members' E-ZPass accounts without their knowledge or authorization. Plaintiff and Class Members had provided Defendants with their bank information as part of their E-ZPass Account as a matter of convenience and part of the E-ZPass operating structure which requires Plaintiff and Class Members to have a fully funded E-ZPass account at all times. This is for Defendants' benefit and allows them to be paid immediately each time Plaintiff or Class member incurs a charge on any of the Defendants' operated E-ZPass toll lane.

69.     Defendants have exceeded their authority by substantially overcharging the Plaintiff and Class Members. Plaintiff and Class Members were not aware and did not authorize or give permission to Defendants to charge their E-ZPass account in the unauthorized amounts that it did during the Class Period.

70.     As such, Defendants' collection of overcharges converted and misappropriated the funds of Plaintiff and the Members of the Class without their consent.

71.     Defendants' faulty equipment and invoicing proximately caused that Plaintiff and Class Members were overcharged and therefore, it was the legal cause of the loss of their funds.

72.     Defendants' conduct was intentional, wrongful, reckless, and outrageous. Alternatively, if the conversion and/or misappropriation was not deliberate, it is the result of Defendants' recklessness and gross neglect.

73.     This conversion and misappropriation of funds benefitted and continues to benefit Defendants, while acting to the severe pecuniary disadvantage of Plaintiff and Class Members.

74. Accordingly, Plaintiff and the individual Class Members and are entitled to recover damages, interest, and punitive damages.

## COUNT V
### Negligence (Including Negligent Misrepresentation and Negligence *Per se*)

75. Plaintiff incorporates by reference and realleges each of the foregoing paragraphs as though fully set forth herein.

76. Plaintiff brings this claim as an alternative to claims arising out of fraudulent conduct.

77. Defendants had a duty to use care when invoicing Plaintiff and Class Members in a manner than was accurate and in according with the published rate.

78. Defendants breached these duties of care by negligently making false and misleading representations regarding whether and what amount should Plaintiff and Class Members pay for passing through E-ZPass toll lanes without reasonable grounds for believing that the false and misleading representations were true.

79. Defendants made these statements for purposes of inducing Plaintiff and Class Members to rely on the false and misleading statements and pay the wrongfully assessed overcharge due to that reliance and for fear of potential additional penalties and/or a delay caused to them when passing through E-ZPass toll lanes.

80. Plaintiff and Class Members reviewed and then justifiably believed and relied upon Defendants' false and misleading statements, and in doing so suffered damages proximately caused by Defendants' breach of duty.

81. Defendants further committed negligence *per se* through violation of state statutes and regulations including those governing Defendants' authority to assess and charge the published rates.

82.     Plaintiff and Class Members have suffered damages proximately caused by violation of these statutes and regulations, are individuals in a Class of persons that were meant to be protected by these various statutes and regulations, and the injuries Plaintiff and Class Members have suffered were of the type the statutes and regulations were meant to prevent.

83.     Plaintiff and Class Members have suffered damages proximately caused by Defendants' negligence and breach of duty in an amount to be determined at trial.

84.     Accordingly, Plaintiff and Class Members and are entitled to recover damages, interest, and attorneys' fees and costs.

## COUNT VI
## Breach of Fiduciary Duty

85.     Plaintiff incorporates by reference and realleges each of the foregoing paragraphs as though fully set forth herein.

86.     In their roles fulfilling the duties of providing tolling services, Defendants assumed and owed a fiduciary duty to Plaintiff and Class Members as users of the E-ZPass toll lanes on various NY roads, tunnels and bridges. For example, the contract between Defendant Kapsch and NY Agencies represents that Kapsch was the entity selected to act on behalf the public authority and that Kapsch is assuming over the integrity and accuracy of the tolling program and disclaims any liability of the public agency for inaccurate invoicing.

87.     Defendants breached their duties by assessing, charging, invoicing, and collecting charges from Plaintiff and Class Members that were in excess of the published rate.

88.     Plaintiff and Class Members suffered damages caused by Defendants' breach of fiduciary duties.

89.     Plaintiff and Class Members are entitled to recover damages, interest, and attorneys' fees and costs.

## COUNT VII
### Relief under Declaratory Judgment Act, 28 U.S.C. §2201 *et seq.*

90.     Plaintiff incorporates by reference and realleges each of the foregoing paragraphs as though fully set forth herein.

91.     Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and that violate the terms of the federal and state statutes described in this complaint.

92.     An actual controversy has arisen in the wake of Defendants' charging Plaintiff and Class Members in excess of published rate resulting in overcharges as alleged herein in violation of Defendants' common law and statutory duties.

93.     Plaintiff continues to suffer injury and damages as described herein as Defendants continue to overcharge Plaintiff and Class Members.

94.     Pursuant to its authority under the Declaratory Judgment Act, it is respectfully requested that this Court enter a judgment declaring, among other things, the following:

95.     Defendants continue to owe a legal duty to not charge Plaintiff and Class Members in excess of published rate;

96.     Defendants continue to breach their legal duties by continuing to overcharge Plaintiff and Class Members in excess of the published rate;

97.     Defendants' ongoing breaches of their legal duties continue to cause Plaintiff and Class Members harm.

98.     Further, it is respectfully requested that this Court should also issue corresponding injunctive relief, including but not limited to enjoining Defendants from engaging in the unlawful

conduct alleged in this claim and requiring Defendants to cease further overcharging the Plaintiff and the Class, and other appropriate equitable relief, including but not limited to improving its E-ZPass infrastructure.

99.     If an injunction is not issued, Plaintiff will suffer irreparable injury and lack an adequate legal remedy in the event of Defendants' ongoing conduct.

100.     The hardship to Plaintiff and Class Members if an injunction is not issued exceeds the hardship to Defendants if an injunction is issued. On the other hand, the cost to Defendants of complying with an injunction by complying with federal and state laws and by ceasing to engage in the misconduct alleged herein is relatively minimal, and Defendants have a pre-existing legal obligation to avoid overcharging the Plaintiff and the Class for their own profits.

101.     Issuance of the requested injunction will serve the public interest by preventing ongoing overcharging by Defendants, thus eliminating the injuries that would result to Plaintiff and Class Members.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the following:

A. Declaring Defendants' overcharging and practices and collection methods to be wrongful, unfair and unconscionable and enjoining any such future collections;

B. Awarding disgorgement of the ill-gotten gains derived by Defendants from their misconduct;

C. Awarding restitution of unconstitutional overcharges paid to Defendants, and other appropriate declaratory and/or injunctive relief, as a result of the wrongs alleged herein in an amount to be determined at trial;

D. Awarding Plaintiff and the Classes pre-and post-judgment interest, to the extent allowable;

E. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees and expenses; and

F. Awarding such other and further relief as the Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a jury trial on all causes of action so triable.


Date: November 6, 2025                Respectfully submitted,

*s/Radhika Gupta*

**LOWEY DANNENBERG, P.C.**
Andrea Farah
Radhika Gupta
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Fax: (914) 997-0035
afarah@lowey.com
rgupta@lowey.com

*Attorneys for the Plaintiff*